# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MARY WAGEMANN; UNITED STATES OF AMERICA, EX REL: MARY WAGEMANN; MEDICAL ASSISTANCE PROGRAMS EX REL: MARY WAGEMANN, | CIVIL ACTION<br><br>NO. 09-3506 |
| versus | SECTION: "C"(2) |
| DOCTOR'S HOSPITAL OF SLIDELL, LLC, PETER H. HERTZAK | |

## ORDER AND REASONS[1]

Before the Court is a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) by defendants Doctor's Hospital of Slidell ("Doctor's Hospital" or "Hospital") and Peter H. Hertzak ("Hertzak"). Rec. Doc. 16. The motion is before the Court on the briefs without oral argument. Having considered the memoranda of counsel, the record, and the applicable law, the defendants' Motion to Dismiss is DENIED and the Court grants Relator 10 days leave to amend for the following reasons.

### I. Background

Relator Mary Wagemann ("plaintiff" or "relator") brings this *qui tam* action under the False Claims Act, 31 U.S.C. §§ 3729, et seq., on behalf of herself and the United States. Plaintiff filed the instant lawsuit on May 11, 2010. Rec. Doc. 1. The instant motion to dismiss was filed on June 15, 2010. Rec. Doc. 16-1.

Relator was hired as a registered nurse at defendant Doctor's Hospital on May 5, 2003. Complaint, ¶ XXXIV. On or about January, 1, 2006, she was appointed Director

---

[1] Geoffrey M. Sweeney, a third-year student at the Loyola University of New Orleans College of Law, assisted in the preparation of this Order and Reasons.

1

of Case Management/Utilization Review. Complaint, ¶ XXXV. The Director of Utilization Review is responsible for performing an annual medical care evaluation study, attending all Utilization Review Committee meetings, preparing data analysis, performing concurrent and retrospective review of the medical charts of inpatients, managing the development and performance of inpatient and outpatient case management procedures, assessing patients for discharge planning needs, and following up on discharges. Complaint, ¶ XXXVI. On April 4, 2007, at a Utilization Review Departmental meeting, those present discussed certain doctors fabricating post-operation complications to allow for patients to remain in the Hospital so that cosmetic surgeries could be performed. Complaint, ¶ XXXVII.

According to the Complaint, Doctors Gilmore and Hertzak manipulated medical records to reflect a lack of bowel sounds for the sole purpose of extending the hospitalization stay of certain patients. Complaint, ¶ XI. These patients received undocumented cosmetic surgery, which included blood transfusions. Complaint, ¶ XI. The costs associated with these surgeries were absorbed into the standard OB/GYN billing. Complaint, ¶ XI. The doctors also falsified medical charts so that these patients were held over for additional days. Complaint, ¶ XI.

Defendants allegedly instructed plaintiff and other employees to falsify, alter, change or ignore alterations to medical records, invoices, vouchers, and claims. Complaint, ¶ XIII. Plaintiff personally observed false or altered medical records, vouchers, invoices, and claims. Complaint, ¶ XIV.

On May 25, 2008, plaintiff notified the Hospital's CEO, Jim Bergeron, of her concerns relating to the conduct discussed at the April 4, 2007 meeting. Complaint, ¶

XXXVIII.  On May 27, 2008, plaintiff's employment with the defendant Hospital was terminated. Complaint, ¶ XXXIX.

II. Law and Analysis

A. *Fraud Allegations*

1. Law

    a. Federal Rule of Civil Procedure 9(b)

Rule 9(b) states, in pertinent part, that when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED.R.CIV.P. 9(b).  Traditionally, the Fifth Circuit has found that to plead fraud with the requisite particularity, a plaintiff must provide the "time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby." *See, e.g, U.S. ex rel. Russell v. Epic Healthcare Management Group*, 193 F.3d 304, 308 (5th Cir. 1999); *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997); *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994); *Tel-Phonic Services, Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992).  More simply, Rule 9(b) requires a plaintiff to plead the "who, what, when, where, and how" of the alleged fraud. *See, e.g, U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997).

Rule 9(b), however, does not operate in isolation.  The rule is supplementary to Rule 8(a). *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009); *WMX Techs.*, 112 F.3d at 178 (noting that Rule 9(b) is to be read "as part of the entire set of rules, including Rule 8(a)'s insistence upon simple, concise and direct allegations.") (internal citations omitted).  As a result, the contours of Rule 9(b)'s application are bound

by the *Bell Atlantic Corporation v. Twombly* decision, in which the United States Supreme Court held that, to survive a 12(b)(6) motion to dismiss, Rule 8(a) requires a plaintiff to plead "enough facts [taken as true] to state a claim of relief that is plausible on its face." 550 U.S. 544, 570, 127 S.Ct. 1955 (2007); *see also Grubbs*, 565 F.3d at 185; FED.R.CIV.P. 8(a). In light of *Twombly*, the Fifth Circuit recently clarified that Rule 9(b)'s particularity requirement demands no more than "simple, concise, and direct allegations of the circumstances constituting fraud" that, taken as true, make relief facially plausible. *Grubbs*, 565 F.3d at 186.

Notably, the Fifth Circuit has acknowledged that Rule 9(b)'s application is "context-specific." *Grubbs*, 565 F.3d at 185; *WMX Techs.,* 112 F.3d at 178. As such, "there is no single construction of [the rule] that applies in all contexts." *Grubbs*, 565 F.3d at 188. The degree of particularity required is therefore driven by the nature of the claim, rather than through the application of a "single court-articulated standard." *Id.*

b. The False Claims Act ("FCA")

The FCA assigns civil liability for (1) the presentment of a false claim to the United States Government ("government"), (2) the use of a false record or statement to get a false claim paid, and (3) conspiracies to get a false claim paid. *Grubbs*, 565 F.3d at 183-84; *see* 31 U.S.C. § 3729(a)(1)(A)-(C). FCA claims may be brought by both the Attorney General and by private persons, known as relators. *Id.* at 184. Should the Attorney General decide not to pursue an FCA suit, a relator may act as a surrogate to prosecute frauds committed against the government. *Id.* (citing *U.S. ex rel. Milam v.*

*Univ. of Tex. M.D. Anderson Cancer Ctr.*, 961 F2d 46, 49 (4th Cir. 1992). These actions are termed "qui tam" suits.[2]

Qui tam claims brought under the FCA must comport with Rule 9(b). *U. S. ex rel. Russell v. Epic Healthcare Management Corp.*, 193 F.3d 304, 308 (5th Cir. 1999). The Fifth Circuit has considered a multitude of challenges to FCA qui tam complaints pursuant to Rule 9(b). *See, e.g., U.S. ex rel. Williams v. Bell Helicopter Textron, Inc.*, 417 F.3d 450 (5th Cir. 2005); *Russell*, 193 F.3d 304. Most dealt with the specific question of whether or not the plaintiff had successfully pleaded fraud with the requisite particularity. *See generally*, *e.g*, *Bell Helicopter*, 417 F.3d 450; *Russell*, 193 F.3d 304; *Columbia/HCA Healthcare*, 125 F.3d 899. In 2009, however, the Fifth Circuit was asked for the first time to "confront squarely" the question of the degree of particularity necessary when pleading the actual details of a false claim under the FCA. *See Grubbs*, 565 F.3d at 188. Thus, the Fifth Circuit was tasked with quantifying the depth of factual detail required under the "time, place, contents, and identity" standard.

Significantly, the Fifth Circuit clarified that the standard is "not a straitjacket for Rule 9(b);" the rule's flexible character demands that the "time, place, contents, and identity" standard remains adaptable to the nature of the claim. *Id.* at 190. The Fifth Circuit began by noting the standard's genesis in common law fraud and securities fraud cases. *Id.* at 188-89. In so doing, it distinguished the elements of a common law fraud claim from the elements of an FCA claim brought under 31 U.S.C. 3729(a)(1). *Id.* The purpose was to illustrate how the prima facie elements of a claim will ultimately dictate

---

[2] "Qui tam" is an abbreviation for *qui tam pro domino rege quam pro se ipso in hac parte sequitur*, which means "who as well for the king as for himself sues in this matter." BLACK'S LAW DICTIONARY 1282 (8th ed. 2004).

5

the degree of particularity required under 9(b)'s "time, place, contents, and identity" standard.

A prima facie claim of common law fraud requires a plaintiff to plead both reliance and damages.[3] *Id.* at 189. As the *Grubbs* court explained, reliance and damages "are [therefore] intertwined with the misrepresentation and heighten the need for attention to the misrepresentation itself." *Grubbs*, 565 F.3d at 189. Consequently, a plaintiff must plead the particular details of the misrepresentation when alleging a claim of common law fraud. *Id*.

Section 3729(a)(1) of the FCA, on the other hand, proscribes the knowing presentment of a false claim to the government for payment. *See* 31 U.S.C. § 3729(a)(1). Such an act violates the FCA whether or not that claim is actually paid. *See id.* Thus, a prima facie claim under this section lacks the elements of reliance and damages. As a result, "[i]t is adequate to allege that a false claim was knowingly presented regardless of its exact amount; the contents of the bill are less significant because a complaint need not allege that the government relied on or was damaged by the false claim." *Grubbs*, 565 F.3d at 189.

2. Analysis

    a. Section 3729(a)(1)

---

[3] The elements of common law fraud are "(1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury." *Allstate Ins. Co. v. Receviable Fin. Co.*, 501 F.3d 398, 406 (5th Cir. 2007) (interpreting Texas law).

Defendants seek dismissal of relator's FCA claims for failure to plead fraud with the requisite particularity under Rule 9(b). Rec. Doc. 16-1 at 6. Specifically, the defendants argue that the relator must plead the "who, what, where, when, and how" to adequately plead a claim of fraud under the FCA. *Id.* at 7. Defendants further aver that failure to cite to a single specific false claim presented to the government renders the claim deficient as a matter of law. *Id.* at 7. The defendants posit that the relator has instead alleged only a general scheme or methodology of fraud, which, under Fifth Circuit precedent, is insufficient to satisfy Rule 9(b). *Id.* at 6.

In response, the relator suggests that the Fifth Circuit's *Grubbs* decision set forth a new, flexible, "context-specific" standard for evaluating FCA claims under Rule 9(b). Under the relator's proposed standard, it need not plead the details of a specific false claim that was actually submitted to the government. Rec. Doc. 23 at 7. Rather, relator contends that allegations of a general scheme coupled with reliable indicia from which to infer presentment will suffice. *Id.* at 8. Defendants contend that such a reading relaxes the particularity requirement of Rule 9(b) in qui tam actions, a measure the Fifth Circuit has explicitly rejected. Rec. Doc. 25-2 at 2; *see Russell*, 193 F.3d at 308.

*Grubbs* neither dismissed the "time, place, contents, and identity" standard, nor implemented a relaxed, "context-specific" standard. Rule 9(b)'s particularity requirement, as it pertains to the FCA, remains unchanged after *Grubbs*. A plaintiff must still plead "with particularity the circumstances constituting fraud." *Grubbs*, 565 F.3d. at 190. However, pleading the specific details of individual false claims is wholly unnecessary to state an FCA claim because the actual numbers are less relevant to the question of liability. *See id.* (clarifying that a plaintiff does not necessarily need the

"exact dollar amounts, billing numbers, or dates" to prove by a preponderance of the evidence that fraudulent bills were actually submitted). This is because "[t]o require these details at pleading is one small step shy of requiring production of actual documentation with the complaint." *Id.* To do so would demand a level of proof greater than that necessary to prevail at trial and "significantly more than any federal pleading rule contemplates." *Id.* Thus, the "time, place, contents, and identity" standard may be satisfied by lesser means. In *Grubbs*, the Fifth Circuit held

> if [a complaint] cannot allege the details of an actually submitted false claim, [it] may nevertheless survive by alleging *particular details* of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted.

*Grubbs*, 565 F.3d. at 190 (emphasis added). In other words, should a plaintiff allege a general scheme to defraud the government, when the scheme occurred, those involved, its mechanics, an explanation of how the claims were false, and a description of the billing system, the "time, place, contents, and identity" standard is met.[4] This is not to say, as relator suggests, that the Fifth Circuit's traditional application of Rule 9(b) to FCA claims has been subsumed or supplanted by *Grubbs*, thereby allowing broader, more generalized allegations. Although "detailed factual allegations" remain unnecessary, asking for "reliable indicia" to satisfy Rule 9(b) is not meant to encourage the use of merely suggestive or conclusory allegations.

---

[4] Though the *Grubbs* court does not explicitly delineate the exact nature of the information required, it provides an example of allegations that will suffice to survive a Rule 9(b) challenge. The Fifth Circuit explained that "[c]onfronting [FCA] defendants with both an alleged scheme to submit false claims and details leading to a strong inference that those claims were submitted—such as dates and descriptions of recorded, but unprovided, services and a description of the billing system that the records were likely entered into—gives defendants adequate notice of the claims." *Grubbs*, 565 F.3d at 190-91.

8

Indeed, the *Grubbs* case was the first time the Fifth Circuit was asked to specifically determine "with what particularity a complaint must plead the actual details of the false claim itself." *Id.* at 188. Although "[t]he particular circumstances constituting fraudulent presentment are often harbored in the scheme," a plaintiff remains obligated to state a facially plausible entitlement to relief that provides the defendant with adequate notice of the claims against it. *Id.* at 190; *see Twombly*, 550 U.S. at 555. Since no genuine conflict exists between *Grubbs* and the Fifth Circuit's earlier decisions, any attempt at reconciliation is unwarranted.

Defendants are correct when arguing that the relator has failed to present sufficient facts to demonstrate that the defendants presented a false claim to the government for payment. *See Grubbs*, 565 F.3d at 190; Rec. Doc. 16-1 at 7. Although the plaintiff is not obligated to plead the specific details of a false claim actually submitted, the relator has done little more than to provide a cursory explanation of the scheme's design. While one may infer that the only reason to create a false claim would be to collect on it, the relator must do more than merely propose the existence of a scheme to establish liability under the FCA. The complaint must therefore allege facts from which the court may reasonably infer that false claims were actually submitted for payment. Relator has offered mere conclusory assertions, rather than the "reliable indicia" demanded by *Grubbs*.

Moreover, to state a claim against the defendant Hospital, relator must allege facts to show the Hospital acted with the requisite intent.[5] "Under all sections of the [FCA],

---

[5] Relator has alleged facts to demonstrate that the defendant Hertzak acted with the requisite intent. However, it would behoove the relator to buttress its amendment with greater factual enhancement, if possible.

9

the defendant must act with the purpose of getting a false claim paid by the Government." *Grubbs*, 565 F.3d at 192. Merely submitting a false claim is not a violation of the FCA. See 31 U.S.C. § 3729(a)(1). For instance, the Hospital may have done so mistakenly, and under such circumstances it should not incur liability.

Relator alleges only that she was fired after informing the Hospital's CEO of the purportedly fraudulent activity. While circumstantially relevant, the relator must do more to show the Hospital's involvement in or acquiescence to the knowing presentment of false claims to the government for payment. As such, pursuant to Rule 9(b), the relator must focus its factual allegations on the "particular circumstances constituting fraud," rather than the ultimate consequences of reporting the alleged fraud. *See* FED.R.CIV.P. 9(b).

b. Section 3729(a)(2)

Section 3729(a)(2) imposes civil liability on any person who "knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government." 31 U.S.C. § 3729(a)(2). While the defendants do not directly attack the relator's § 3729(a)(2) claim, the Court is compelled to note the Complaint's deficiencies in this regard. Relator asserts that it has satisfactorily alleged that defendants Hertzak and Doctor's Hospital have committed acts that squarely fit within §3729(a)(2)'s boundaries. Rec. Doc. 23 at 10. Taking the facts pleaded as true, this is only partially accurate with respect to Hertzak. Relator alleges that Hertzak manipulated medical records to allow for cosmetic surgeries and associated costs to be subsumed into a standard OB/GYN bill. Rec. Doc. 1 at 4. Relator then asserts that Hertzak occasionally insisted that patients be held over for additional days, even

though such additional time was medically unnecessary. *Id.* While these allegations suggest the manufacture and use of false records, further factual enhancement—such as dates, names, and a more targeted explanation of the false record or statement—is necessary to satisfy the "time, place, contents, and identity" standard as it applies to the relator's § 3729(a)(2) claim. *See* 31 U.S.C. § 3729(a)(2).

With reference to the defendant Hospital, however, the relator has pleaded no facts from which to infer that Doctor's Hospital knowingly made, used, or caused to be made or used, a false record or statement for the purpose of receiving payment from the government on a false or fraudulent claim. Again, while the possibility exists that the Hospital made or caused to be made a false record or statement, § 3729(a)(2) liability also requires that the Hospital did so knowingly and with the purpose of defrauding the government. Here, the facts pleaded as they relate to this claim, even when taken as true, comprise only conclusory assertions, which is insufficient to satisfy Rule 9(b)'s particularity requirement. Although simple and concise allegations suffice, the relator must state with particularity the circumstances constituting § 3729(a)(2) fraud. *See Grubbs*, 565 F.3d at 193; FED.R.CIV.P. 9(b).

c. Section 3729(a)(3)

Relator also alleges defendants violated the FCA's conspiracy provision. Rec. Doc. 1 at 1. Section 3729(a)(3) imposes civil liability on any party who "conspires to defraud the government by getting a false or fraudulent claim allowed or paid." 31 U.S.C. § 3729(a)(3). In the Fifth Circuit, an FCA conspiracy requires "(1) the existence of an unlawful agreement between defendants to get a false or fraudulent claim allowed or paid

by [the government] and (2) at least one act performed in furtherance of that agreement." *U.S. ex rel Farmer v. City of Houston*, 523 F.3d 333, 343 (5th Cir. 2008).

While the defendants again do not explicitly attack the relator's pleading of a § 3729(a)(3) claim, the Court must point out the Complaint's deficiencies in this regard. As it stands, the Complaint provides no facts from which to reasonably infer an agreement between Hertzak and the Hospital. Instead, the relator offers only a recitation of the statutory elements necessary to state a claim. (See Complaint, ¶¶ IX, XI, XVIII, XIX, XX). Rule 9(b), however, requires a plaintiff alleging a conspiracy to commit fraud under the FCA "must 'plead with particularity the conspiracy as well as the overt acts . . . taken in furtherance of the conspiracy.'" *Grubbs*, 565 F.3d at 193 (citing *FC Inv. Group, LC v. IFX Markets, Ltd.*, 529 f.3d 1087, 1097 (D.C. Cir. 2008). Therefore, to survive Rule (b)'s particularity requirement, relator must plead facts to demonstrate the existence of an agreement between the defendants to defraud the government, and the performance of at least one overt act in furtherance of the unlawful agreement. Should the relator fail to do so, its § 3729(a)(3) will ultimately fail when confronted by Rule 9(b).

B. Failure to State a Claim

1. Law

    a. Rule 12(b)(6) Standard

Federal Rule of Civil Procedure 8(a)(2) generally requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what . . . the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957). The Court is to accept "all well-pleaded facts as true, viewing them in the light most favorable to the

plaintiff." *Martin K. Eby Const. Co., Inc. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (citing *Jones v. Greninger,* 188 F.3d 322, 324 (5th Cir.1999)).

To survive a Rule 12(b)(6) motion, the plaintiff must "plead enough facts to state a claim of relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007). While facial plausibility does not depend on detailed factual allegations, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations, quotation marks, and brackets omitted).

b. Pleading Materiality under the FCA

In addition to the elements listed in the FCA's statutory language, there is also a requirement of materiality implicit in the Act. *U.S. v. Southland Mgmt. Corp.*, 288 F.3d 665, 675 (5th Cir. 2002) ("Southland I"); *see also U.S. ex rel. Gross v. AIDS Research Alliance-Chicago*, 415 F.3d 601, 604 (7th Cir. 2005); *U.S. ex rel. Costner v. URS Consultants, Inc.*, 317 F.3d 883 (8th Cir. 2003); *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 785 (4th Cir. 1999). In the Fifth Circuit, the test for materiality is whether "the false or fraudulent statements have the potential to influence government decisions." *U.S. ex rel. Longhi v. Lithium Power Techs., Inc.*, 575 F.3d 458, 470 (5th Cir. 2009). Having the "natural tendency to influence or be capable of influencing" requires only "that the false or fraudulent statements either (1) make the government prone to a particular impression, thereby producing some sort of effect, or (2) have the ability to effect the government's actions, even if this is a result of indirect or intangible actions on the part of the Defendants." *Id.* at 470.

b. Analysis

The defendants seek dismissal of relator's section 3729 claims pursuant to Federal Rule of Civil Procedure 12(b)(6). Rec. Doc. 16-1 at 11. Specifically, defendants contend that the alleged false claims do not contain material misrepresentations that would influence the government's decision to pay the claims. Relator responds that it has satisfied the materiality requirement by pleading allegations of fraud that artificially inflated the government's costs. Alternatively, relator argues that defendants' fraud stemmed from an attempt to obtain outlier payments from Medicare.

Defendants are correct in asserting that the relator has failed to show how the alleged fraud would have a natural tendency to influence, or be capable of influencing, the government's decision to pay the claims. Rec. Doc. 16-1 at 11. *See Longhi* 575 F.3d at 470 ; *see also U.S. v. Southland Mgmt. Corp.*, 326 F.3d 669 (5th Cir. 2003) (en banc) ("Southland II"). Both parties expend considerable intellectual energy discussing Medicare's reimbursement policy, the relevant exceptions to the policy, and its implications for relator's FCA claims. Without discussing the merits of these particular discussions, the Court finds that to influence the government within the meaning of the FCA, the relator must do more than merely allege the occurrence of unnecessary procedures and extended recovery stays. The Complaint must allege how the defendants' allegedly fraudulent activities affected the amount of reimbursement received from Medicare. Generally, Medicare reimburses a fixed amount per patient based on the patients diagnosis, the procedures performed, and the Diagnosis Related Group ("DRG") into which a patient falls. *U.S. ex rel. Lam v. Tenet Healthcare Corp.*, 287 Fed. Appx. 396, 397 (5th Cir. 2008). If the defendants' alleged scheme did not increase the fixed

amount paid by Medicare, they are immaterial to the amount of reimbursement received. Furthermore, if the amount paid by Medicare remains unchanged, the alleged scheme cannot possibly be said to have influenced the government's decision to pay a false claim. To state a claim under the FCA, relator must allege facts that would demonstrate otherwise.

Furthermore, should the relator wish to assert that the defendants' purported scheme was founded on aspirations of committing outlier fraud, the Complaint must allege either principally or in the alternative that the false claims were created to obtain outlier medical benefits. Here, the Complaint contains no such allegations.

Outlier reimbursements are contingent on unusually long hospital stays and/or unusually costly treatments. *Lam*, 287 Fed. Appx. at 397. Relator must therefore allege facts to demonstrate that the unnecessary procedures resulted in either or both, thereby artificially inflating charges without a corresponding increase in costs.[6] *Id.*

Accordingly;

It is ORDERED that the relator has ten days leave to amend the complaint in conformity with this Order. Failure to do so will result in dismissal of its FCA claims without prejudice. The motion to dismiss filed by defendants Doctor's Hospital of Slidell, L.L.C. and Peter H. Hertzak is DENIED.[7]

---

[6] Outlier payments are warranted when a hospital's "cost-adjusted charges exceed either a fixed multiple of the applicable DRG rate or a fixed dollar amount established by the Center for Medicare and Medicaid Services ('CMS'), called the 'Outlier Threshold.'" *Lam*, 287 Fed. Appx. at 397-98; see 42 U.S.C. § 1395ww(d)(5)(A)(iii).

[7] Relator agrees that the state law claims against defendant Hertzak will be dropped on amendment.

15

New Orleans, Louisiana, this 5th day of August, 2010

                                                          Helen G. Berrigan  
                                                       United States District Judge